NINA M. PATANE, Esq. (SBN 157079)
ANDREA C. AVILA, Esq. (SBN 193982)
PATANE • GUMBERG • AVILA, LLP
Office: 4 Rossi Circle, Suite 231, Salinas, CA 93907
*Mailing*: P.O. Box 3770, Salinas, CA 93912
Telephone:  (831) 755-1461
Facsimile:  (831) 755-1477
Email: npatane@pglawfirm.com
        aavila@pglawfirm.com

Attorneys for Plaintiff,
COREY TERILL STRUVE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| COREY TERILL STRUVE<br><br>　　　Plaintiff,<br><br>v.<br><br>ARTURO SALGADO, an individual;<br>MICHELLE KIMBLE, an individual; and<br>DOES 1 through 25, inclusive,<br><br>　　　Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**Demand for Jury Trial** |

1.     Plaintiff COREY TERILL STRUVE ("Plaintiff" or "Ms. Struve"), is, and at all times herein mentioned was, a resident of the county of Monterey, State of California.

2.     At all times herein mentioned, defendant ARTURO SALGADO ("SALGADO") was employed as a deputy sheriff by the Monterey County Sheriffs Department (County"). Defendant SALGADO is sued individually and in his capacity as a deputy sheriff for the County. By engaging in the conduct described herein, Defendant SALGADO acted under the color of law and in the course and scope of his employment with the County. By engaging in the conduct described herein, Defendant SALGADO exceeded the authority vested in him as a deputy sheriff under the United States Constitution, the California Constitution, and as an employee of the County.

///

- 1 -

Complaint for Damages

3.	At all times herein mentioned, Defendant MICHELLE KIMBLE ("KIMBLE") was employed as a deputy sheriff of County.  Defendant KIMBLE is sued individually and in her capacity as deputy sheriff for the County.  By engaging in the conduct described herein, Defendant KIMBLE exceeded the authority vested in her as a deputy sheriff under the United States Constitution, and as an employee of County.

4.	Plaintiff is unaware of the true names and capacities of those defendants sued herein as Does 1 to 25, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when same are ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants was in some manner responsible for the occurrences herein alleged.

5.	On January 14, 2023, Ms. Struve was celebrating her birthday with friends and her parents at The Tap Room in Pebble Beach, California.  It was also her parents' wedding anniversary. Ms. Struve was staying at the Pebble Beach Lodge ("the Lodge") as a paid guest. The Tap Room is a part of the Lodge where alcohol is the principal item for sale.  The Tap Room maintains a tavern atmosphere and serves as a "watering hole" for the Lodge's golfers, guests and patrons.

6.	Between approximately 9:00 p.m. to 10:00 p.m., Ms. Struve had one drink at most while socializing with friends and other patrons whom were also consuming alcohol. A video recording from inside The Tap Room confirms friendly and enjoyable interactions.

7.	At some point during the evening, a bartender working in The Tap Room reported to Pebble Beach security that Ms. Struve was bothering other patrons in The Tap Room. The report runs contrary to video of the interactions as stated above.

8.	At approximately 10:10 p.m., Pebble Beach Security appeared and asked Ms. Struve to leave The Tap Room. Ms. Struve was shocked and troubled by the request however she complied by leaving The Tap Room shortly thereafter with her mother Rebecca Struve. Ms. Struve commenced the walk back to her room.  Pebble Beach Security followed closely behind. Ms. Struve walked approximately 150 yards from The Tap Room to within 40 yards of her room when she was abruptly stopped in the courtyard area by Pebble Beach Security.

///

- 2 -

9. Video of the courtyard provided by Pebble Beach Company shows that Ms. Struve was balanced and walking in a normal gait. At one point, Ms. Struve appeared to use her cell phone to make a phone call. Ms. Struve proceeded in the direction of her room. Ms. Struve had not been instructed that her guest status at the Lodge had been revoked.

10. Unbeknownst to Ms. Struve, Monterey County Sheriff's Deputies had been summoned to the Lodge by Pebble Beach Security. There are two principal reports of the incident prepared by Monterey County Deputy Sheriffs KIMBLE and SALGADO, (collectively, the "Deputies"). SALGALDO's report states that the Deputies were dispatched concerning a report of "multiple intoxicated guests involved in a heated argument" with "no mention of weapons". KIMBLE's report states that the Deputies were dispatched to a heated argument among intoxicated guests with "approximately 10 people involved…." A review of The Tap Room video provided by Pebble Beach Company shows that no patrons were involved in a heated argument.

11. On arrival, Deputies were informed there was only one intoxicated individual who caused a "disturbance" in The Tap Room. The Deputies were then escorted to Ms. Struve who was speaking with Pebble Beach Security. Ms. Struve is 115 pounds, was unarmed and holding only a cell phone. The Deputies detained Ms. Struve who was now thirty-plus minutes removed from her time at The Tap Room. Ms. Struve had no further alcohol after leaving the bar. Ms. Struve was cooperative and pleasant in responding to questions by KIMBLE. Meanwhile SALGADO was briefed by Peter Brown, Pebble Beach head security officer.

12. SALGADO rejoined the discussion with Ms. Struve at which time he commanded that Ms. Struve return to her room. Neither Peter Brown, SALGADO or KIMBLE informed Ms. Struve that her guest status at the Lodge was revoked. Ms. Struve was confused by the unusual command and asked, "What have I done?" The Deputies again commanded that Ms. Struve go to her room. Ms. Struve asked again "What have I done?"

13. Ms. Struve was told she would be arrested for public intoxication if she did not return to her room. Ms. Struve then commenced walking to her room per the Deputies' demand. Suddenly and without warning, KIMBLE grabbed Ms. Struve's arm preventing her ability to walk further. Ms. Struve assured the Deputies she was returning to her room and was released. Ms. Struve followed the

- 3 -

only path she knew to get to her room.  Peter Brown confirmed to the Deputies that Ms. Struve was headed in the direction of her room.  Ms. Struve walked without incident and made a phone call with her cell phone to have someone pick her up.

14.     Pebble Beach security and the Deputies followed Ms. Struve.  Moments later, Ms. Struve was ordered to stop while crossing Palmero Avenue, the final stretch before reaching her room.  Ms. Struve immediately stopped per the Deputies' command.  The Deputies opted to remain on Palmero Avenue while they detained and questioned Ms. Struve.  Ms. Struve desired to continue the discussion on the sidewalk however she did not feel free to leave or to move any further.  Ms. Struve remained.

15.     SALGADO reported that during this second detention, Ms. Struve was on her phone calling someone to pick her up.  Ms. Struve was reasonably and responsibly attempting to safely leave the Lodge and remove herself from this unfortunate occurrence.  Ms. Struve was commanded once again to go to her room.  Ms. Struve could not understand this bizarre command given her paid guest status that evening.  Ms. Struve asked approximately nine separate times, "What have I done?"  SALGADO, who appeared agitated by Ms. Struve's questioning, turned to Peter Brown to ask if he wanted Ms. Struve arrested for trespassing. Mr. Brown responded in the affirmative.

16.     Video of the arrest evidences that Ms. Struve was immediately arrested without ever being requested to leave the Lodge.

17.     Video further confirms that when Ms. Struve asked why she was being arrested, SALGADO responded, "for not listening".

18.     On the contrary, SALGADO's Incident Report falsely embellishes that prior to the arrest, "I advised Corey she was no longer welcomed at The Lodge and on Pebble Beach Property. Corey stated she did not care, and she was not going to leave the property because she had not done anything wrong. I advised Corey she was being placed under arrest for being drunk in public and now was trespassing on Pebble Beach property."

19.     Similarly, KIMBLE's report states: "Brown wanted Corey admonished for trespassing. Corey was given the trespassing admonishment and then still refused to leave the property."

///

- 4 -

Complaint for Damages

20.    Video footage of the arrest confirms that SALGADO and KIMBLE's accounts of the arrest are blatantly false and intentionally, willfully and maliciously designed to bolster evidence to support Ms. Struve's unlawful arrest.

21.    Video of Ms. Struve being handcuffed shows that she was compliant, not resistive and expressing herself in a calm tone.  The video is in stark contrast to the fictionalized and highly troubling report of SALGADO which states that while putting Ms. Struve in handcuffs, "I immediately felt Corey tense her body and arms and began to scream at us telling us she was going to sue us. Corey then began to attempt to release herself from my grip by pulling away and swinging her body left and right.  I maintained my grip and with my right hand on her wrist and with my left I held her left bicep. I ordered Corey to stop resisting and she continued to move around." None of the aforementioned statements are evidenced in the video.

22.    KIMBLE's Incident Report similarly states that Ms. Struve attempted to resist being placed in cuffs, facts which are entirely inapposite with video of the arrest.

23.    Ms. Struve became imbalanced after KIMBLE leaned into her to accomplish the aggressive arrest causing Ms. Struve to stumble forward.  KIMBLE reported that she was struck by Ms. Struve's leg.  Video confirms Ms. Struve's leg made no contact with either deputy. No further verbal commands were given by the Deputies.  Ms. Struve was violently taken to the ground face first even though she is petit, was unarmed, handcuffed with her hands behind her back, posed no threat to the Deputies or Lodge security and the crimes for which she was detained were at most, public intoxication and trespass – misdemeanors.

24.    Ms. Struve was then commanded to stand on her own.  Ms. Struve, who was in complete shock and whose hands were cuffed behind her back, complied and was subsequently walked to the patrol vehicle.  KIMBLE searched Ms. Struve's person.

25.    Ms. Struve was violently taken to the ground face first a second time when Deputies allegedly perceived that she resisted getting into the patrol car.  KIMBLE reported that Plaintiff kicked her two times in order to justify this second takedown.  As noted above, the Deputies' Incident Reports contain numerous grossly false statements and therefore lack credibility.

///

- 5 -

26.     At this point, several persons including Lodge guests, Plaintiff's parents and other third parties stood nearby and witnessed Plaintiff's humiliating and violent arrest.

27.     On January 18, 2023, the Monterey County District Attorney filed a Complaint against Plaintiff in the Monterey County Superior Court, Case Number 23CR000360 asserting the following charges:  Penal Code section 647(f) – Drunk in Public; Penal Code section 602(o) – Trespassing; Penal Code section 69(a) – Resisting Arrest by Means of Threats or Violence; Penal Code section148(a)(1) – Resisting/Obstructing/Delaying Arrest; Penal Code section 21956(1) – Pedestrian in Roadway.

28.     The criminal proceedings remain pending as of the present date.

29.     As a proximate result of Defendants' conduct, Plaintiff sustained a multitude of injuries including injuries to her: left thigh, right bicep, left elbow, left shoulder, forehead, upper interior lip, nose, left wrist, left collar bone, left tricep, knees, mid chest, right wrist, left shin, left calf, right and left forearms.  Ms. Struve also sustained a right black eye.  Ms. Struve has required medical treatment as well as physical therapy treatment.

30.     As a proximate result of Defendants' conduct, Plaintiff suffers from severe emotional distress including depression, anxiety, worry, upset, sleeplessness and associated headaches.

31.     As a proximate result of Defendants' conduct, Plaintiff was forced to hire criminal defense counsel to defend her interest in the meritless criminal proceedings.

32.     As a proximate result of Defendants' conduct, Plaintiff, a social media influencer with a wide audience, has lost profits related to the loss of several brand sponsorships.

33.     On June 12, 2023, Plaintiff presented a Claim for Damages against The County of Monterey. A true and correct copy of this claim is attached hereto as **Exhibit A** and incorporated by this reference. Plaintiff's claim was rejected on or about July 26, 2023.

## FIRST CAUSE OF ACTION

### (42 U.S.C. § 1983 – Against Defendant SALGADO and KIMBLE)

34.     Plaintiff realleges and incorporates by reference paragraphs 1 through 33, inclusive, of this complaint.

///

///

- 6 -

Complaint for Damages

35.     In doing the acts herein complained of, Defendants SALGADO and KIMBLE acted under the color of law to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to:

a.   The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b.   The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourth Amendment to the United States Constitution;

c.   The right to be free from the use of excessive force by police officers, as guaranteed by the Fourth Amendment to the United States Constitution;

36.     As a proximate result of Defendants' conduct, Plaintiff has incurred bodily injury, medical expenses, lost income, lost career opportunities, and attorneys' fees and court costs related to defense of a criminal action arising from the January 14, 2023 incident involving SALGADO and KIMBLE to her damage in an amount according to proof.

37.     As a further proximate result of Defendants' conduct, Plaintiff suffered severe emotional and mental distress, fear, terror, anxiety, humiliation, embarrassment, and loss of her sense of security and dignity.

38.     As a further proximate result of the conduct of Defendants, Plaintiff was compelled to hire an attorney to prosecute this action on her behalf and vindicate her rights, thereby incurring attorney's fees and court costs.

39.     The conduct of Defendants was malicious, wanton and oppressive.  Plaintiff is, therefore, entitled to an award of punitive damages in an amount within the jurisdictional limits of the court.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Battery - Against Defendants SALGADO and KIMBLE)

40.     Plaintiff realleges and incorporated by reference paragraphs 1 through 39, inclusive, of this complaint.

///

- 7 -

Complaint for Damages

41.    Defendants exercised force against Plaintiff by violently taking her to the ground face first with the intent to harm or offend her.

42.    Plaintiff did not consent to Defendants' violent arrest and subsequent takedowns.

43.    Plaintiff was harmed and offended by Defendants' violent conduct.

44.    A reasonable person in Plaintiff's situation would have been offended by the violent conduct.

45.    As a direct and proximate cause of Defendant's conduct, Plaintiff was harmed and suffered damages as set forth herein.

46.    Defendants' conduct was malicious, willful and oppressive.  Plaintiff is therefore entitled to an award of punitive damages within the jurisdictional limits of this court.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (California Civil Code Section 52.1 - Against All Defendants)

47.    Plaintiff realleges and incorporates by reference paragraphs 1 through 46, inclusive, of this complaint.

48.    Defendants SALGADO and KIMBLE's conduct as described herein violated Section 52.1 of the California Civil Code in that Defendants interfered with Plaintiff's exercise and enjoyment of her civil rights, as enumerated above, through use of excessive force, false arrest, false imprisonment, wrongful search of Plaintiff's person and falsifying reports to justify their unlawful conduct.

49.    Defendants injured Plaintiff in retaliation for Plaintiff's exercise of her constitutional rights in contravention of the provisions of Civil Code Section 52.1.

50.    Plaintiff suffered violations of her constitutional rights and damages as set forth herein.

51.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

///

///

///

- 8 -

Complaint for Damages

## FOURTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress – Against Defendants

### KIMBLE and SALGADO)

52.    Plaintiff realleges and incorporates by reference paragraphs 1 through 51, inclusive, of this complaint.

53.    Defendants KIMBLE and SALGADO acted intentionally or recklessly when they arrested Plaintiff and utilized excessive force against her.

54.    Defendants' conduct was extreme and outrageous given a multitude of factors including: Plaintiff posed no threat to Defendants, herself or others, Plaintiff was never admonished for trespassing as falsely represented by the Defendants, the crimes for which Plaintiff was detained were non-violent and non-threatening misdemeanors and Defendants' falsified their reports to justify their unlawful and malicious conduct.

55.    Defendants' conduct caused severe emotional distress to Plaintiff.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Negligence – Against All Defendants)

56.    Plaintiff realleges and incorporates by reference paragraphs 1 through 55, inclusive, of this complaint.

57.    At all times herein mentioned, Defendants were subject to a duty of care to avoid causing unnecessary physical harm and distress to citizens in the exercise of law enforcement functions. Defendants' conduct, as set forth herein, breached the standard of care to be exercised by reasonable sheriff deputies, proximately causing Plaintiff to suffer damages as herein alleged.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

///

///

///

///

///

- 9 -

Complaint for Damages

## SIXTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress – Against Defendants

### KIMBLE and SALGADO)

58.    Plaintiff realleges and incorporates by reference paragraphs 1 through 57, inclusive, of this complaint.

59.    Defendants KIMBLE and SALGADO were subject to a duty of care to avoid causing unnecessary physical harm and distress to citizens as well as the duty to avoid the deprivation of a person's constitutional rights.  The conduct of Defendants KIMBLE and SALGADO did not comply with the standard of care to be exercised by reasonable sheriff deputy officers.

60.    The conduct of Defendants KIMBLE and SALGADO as set forth herein, was extreme and outrageous and beyond the scope of conduct which should be tolerated by citizens in a democratic and civilized society.

61.    As a proximate result of Defendants KIMBLE and SALGADO'S conduct, Plaintiff suffered severe and extreme mental and emotional distress.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands Trial by Jury in connection with this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.   General damages in an amount within the jurisdictional limits of this court;

2.   Special damages in an amount according to proof;

3.   Punitive damages in an amount within the jurisdictional limits of this court;

4.   Attorney's fees pursuant to 42 U.S.C. § 1983;

5.   Actual, exemplary, and an additional $25,000.00 per defendant for each violation, and reasonable attorney's fees, pursuant to Civil Code Section 52(b);

6.   For costs of suit incurred herein; and

7.   For all further and proper relief.

///

- 10 -

Complaint for Damages

Respectfully Submitted,

Dated: January 22, 2024            PATANE • GUMBERG • AVILA, LLP

By: _____
NINA M. PATANE
ANDREA C. AVILA
Attorneys for Plaintiff  COREY TERILL STRUVE

- 11 -

Complaint for Damages